IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| COMMUNICATION WORKERS ) | |
| OF AMERICA, AFL-CIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:13-cv-03398-MDH |
| ) | |
| SOUTHWESTERN BELL ) | |
| TELEPHONE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 21) and Plaintiff's Motion for Summary Judgment (Doc. No. 24). In addition, Defendant has also filed a Motion to Strike Plaintiff's Declarations (Doc. No. 31). All pending motions have been fully briefed and are ripe for review.

## BACKGROUND

This is an action brought by Communication Workers of America, AFL-CIO ("CWA"), a labor organization, against an employer, Southwestern Bell Telephone Company ("SWBT"), to compel arbitration of a labor dispute under a collective bargaining agreement ("CBA"). Plaintiff brings the action pursuant to Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. Plaintiff contends the collective bargaining agreement, a contract between CWA and SWBT, provides for final and binding arbitration of grievances and therefore, obligates the employer to submit the employment dispute at issue to arbitration. SWBT contends a last change agreement ("LCA"), a contract between SWBT and Felicia McCauley, an employee of

1

SWBT, to which CWA was not a party, supersedes the CBA, and as such, waives CWA's right to arbitrate the grievance.

The CBA, effective April 2009 through its expiration in April 2013, contains a grievance article and an arbitration provision permitting CWA to arbitrate disputes over contract terms, dismissals, suspensions and demotions. The contract states, "The Union shall be the exclusive representative of all the employees in the Bargaining Unit for the purposes of presenting to and discussing with the Company grievances of any and all such employees arising from such employment." The Formal Grievance procedure normally consists of two successive steps, through which CWA can appeal an adverse decision. SWBT's decision at the second step completes the Formal Grievance procedure. The CBA then *extends to CWA* the right to arbitrate grievances if dissatisfied with SWBT's decision after completion of the Formal Grievance process. Specifically, Article IV, Arbitration, states:

> If, during the term of this Agreement, … between the Union and Company, and subsequent agreements which by specific reference therein are made subject to this Article, a difference shall occur, between the Union and the Company, and continue after all steps in the "Formal Grievance" procedure established in the 2009 Departmental Agreement shall have been undertaken and completed, regarding: … c. the dismissal for just cause of any employee with more than one (1) completed year's Net Credited Service, … then in any such event, either *the Union* or Management *may submit the issue* of any such matter *to arbitration* for final decision in accordance with the procedure hereinafter set forth …" (*emphasis added*).

In 2011, Felicia McCauley worked as a service representative for SWBT in its call center in Springfield, MO. At that time, McCauley had been employed with the company for over 13 years. McCauley was a member of CWA, her job was represented by CWA, and her employment was covered by the parties' CBA. In August 2011, McCauley was suspended for misconduct. On August 29, 2011, McCauley and her local union representative, Kendra Dame,

2

Case 6:13-cv-03398-MDH   Document 36   Filed 12/19/14   Page 2 of 10

met with SWBT management to discuss McCauley's suspension and avoidance of her possible termination.  During the meeting, SWBT's call center manager, Jason Beltz, presented McCauley an LCA.  Beltz read the terms of the LCA out loud to McCauley and Dame.  Afterward, McCauley and Dame had an opportunity to review the LCA and discuss its terms.

      The August 29, 2011, LCA, states, in part,

> I, Felicia McCauley, voluntarily enter into this Last Chance Agreement with Southwestern Bell Telephone (SWBT) of my own free will … I understand and agree that SWBT has just cause to suspend and terminate my employment for Code of Business Conduct Violations.  However, in exchange for SWBT not terminating my employment I agree that:… 6. This Agreement will remain in effect for 24 months from the date of my reinstatement.  If I am suspended or dismissed for violating this Agreement, any grievance relating in any way to such suspension or dismissal will not be subject to arbitration.

      McCauley signed the LCA.  Neither Dame, nor any other CWA representative, signed the LCA.  SWBT and McCauley agree the waiver of the right to grieve or arbitrate was discussed during the meeting.  However, McCauley and SWBT have different understandings of the terms and proper interpretation of the arbitration provision of the LCA.  McCauley contends the waiver applied only to grievances prior to the date of the LCA.  Defendant argues the language clearly states the waiver is with regard to future grievances.  CWA contends waiver of its rights under the CBA requires CWA approval and therefore a LCA which it did not approve does not have any impact on its right to seek arbitration.

      After McCauley signed the LCA she was removed from suspension and reinstated the next day.  On or about November 4, 2011, SWBT dismissed McCauley.  SWBT contends McCauley was dismissed for just case, which was unsatisfactory job performance.  McCauley denies adequate grounds for her dismissal existed.

3

On November 15, 2011, CWA filed a grievance challenging the dismissal. This was the first step of the Formal Grievance procedure. On March 12, 2012, after the first step grievance meeting, CWA was informed that the grievance was denied. CWA then appealed the McCauley grievance to the second step of the Formal Grievance procedure. On July 30, 2012, CWA was notified the grievance was denied at the second step. It is undisputed the parties completed the two step Formal Grievance Procedure set forth in the CBA.

Pursuant to Article IV, after the two step formal grievance procedure was complete, CWA notified SWBT that it elected to arbitrate the grievance and made a timely submission of arbitration. The submission was made to the American Arbitration Association, the parties selected an arbitrator, and then scheduled a hearing for August 21, 2013. At the beginning of the arbitration hearing, after all parties arrived at the hearing, SWBT for the first time, informed CWA and the arbitrator that it refused to arbitrate. This was the first notice to CWA that SWBT would not arbitrate the grievance and that SWBT claimed CWA's right to arbitrate had been waived by McCauley's execution of the LCA.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990). Once the moving party has established a properly supported motion for summary

4

judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*. 477 U.S. at 248.

## DISCUSSION

The issue before the Court centers around whether the LCA entered into between McCauley and SWBT supersedes the rights of CWA under the CBA with regard to the arbitrability of grievances. Specifically, Plaintiff contends McCauley's termination, for alleged just cause, should be subject to arbitration pursuant to Article IV. Defendant claims the right to arbitrate under the CBA was waived when McCauley voluntarily signed the LCA.

Generally, "where a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Technologies, v. Communication Workers of America,* 475 U.S. 643, 650 (1986).[1] Where the arbitration clause in a CBA is broad, the presumption of arbitrabiilty is particularly applicable absent any express provision excluding a particular grievance. *Id.* "Only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* The issue of whether the parties agreed to arbitrate is an issue for the Court. *Id.* at 648.

Here, the parties dispute whether a provision in a last chance agreement entered into between an employee, McCauley, and the employer, SWBT, prevents CWA from arbitrating a grievance as provided in a CBA between SWBT and CWA. The 8th Circuit has discussed the

---

[1] "The presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *Id.*

5

validity and enforcement of last chance agreements. In *Coca-Cola Bottling Company of St. Louis, v. Teamsters Local Union No. 688,* the 8th Circuit held that a "bargained-for" LCA supersedes a CBA's just cause provision. 959 F.2d 1438, 1440-1441 (8th Cir. 1992). The 8th Circuit stated an arbitrator is bound by the plain meaning of the mandatory termination provision of the LCA. *Id.* The Court noted in *Coca-Cola* that there were arbitrable issues regarding whether the alleged triggering event occurred and whether that event really was a triggering event – all as defined by the last chance agreement. *Id.* at 1441. The Court cited "[T]he language of the agreement is clear and unambiguous, and since the parties agreed to it, they are bound by it." *Id.* at 1442, *citing, Tootsie Roll Indus v. Local Union No. 1, Bakery Worker's Int'l Union,* 832 F.2d 81, 84 (7th Cir. 1987). As a result of the LCA in *Coca-Cola,* the arbitrator was confined to the terms of the LCA and could not go outside the bargained for terms of the agreement.

*Coca-Cola* is distinguished from the case in hand by two factors. First, *Coca-Cola* was decided *after* the matter had been subjected to arbitration. In essence, its court was reviewing the arbitrator's decision. Secondly, in *Coca-Cola,* the LCA was executed by the company representatives *and* the union stewards.[2] *Id.* at 1440. Here, the LCA was signed by an individual employee *not* by any representative of CWA.

In *Associated Elec. Co-op Inc. v. International Broth. Of Electrical Workers, Local No. 53,* the 8th Circuit stated in "concluding that the arbitrator was obligated to enforce a mandatory termination provision in the LCA, the district court read our decision in *Coca-Cola Bottling* too broadly." 751 F.3d 898, 902 (8th Cir. 2014). In *Coca-Cola,* the 8th Circuit noted that "*normally* last change agreements are binding in arbitration." *Id.* The distinguishing facts in *Associated*

---

[2] The employee in *Coca-Cola*, although present during the last chance agreement meeting, refused to sign the LCA.

6

*Elec. Co-op* were that the Union did not agree to the LCA and that the LCA was the result of a mutual mistake. *Id.* The Court stated, we "give decisions by labor arbitrators substantial deference. The federal labor laws 'reflect a decided preference for private settlement of labor disputes.'" *Id.* at 901. In *Associated Electric Co-op,* the Court remanded the case to the district court to enter final judgment enforcing the arbitrator's award (as modified by its opinion.) *Id.* at 904. The Court stated the LCA was *not* agreed to by the Union and that the relevant agreement between the Union and the Employer was the CBA. *Id.* at 902. Again, it is significant, *Associated Elec. Co-op* was decided *after* the dispute was submitted to arbitration in accordance with a CBA.

Here, Plaintiff argues paragraph 6 of the LCA is invalid because McCauley, an individual employee, did not have the authority to make an agreement with SWBT that would conflict with the terms of the CBA. Plaintiff contends McCauley could not waive CWA's right to arbitrate under the CBA without CWA's proper authority agreeing to the same.[3] Plaintiff also argues McCauley, as an individual, could not initiate arbitration because only CWA can take a grievance to arbitration.[4]

On the other hand, Defendant contends that the LCA was a valid and enforceable bargained for exchange, in which McCauley gave up any right she may have had to arbitrate

---

[3] Plaintiff believes the CWA Vice President would have to negotiate the proposed waiver in order for it to become effective. The Court declines to address that issue because here the LCA was not signed by any union representative, on either a local or national level.

[4] Defendant cites to Dame's deposition that states McCauley is the "real party in interest" in the dismissal grievance. It further argues if a grievant requests a grievance not be pursued CWA "will honor that request." However, Dame's deposition testimony also states if the employee doesn't want to be involved the Union can still file a grievance on their behalf. Doc. 22-3 at p. 38. Further, under the CBA, CWA is the party with the right to proceed to arbitration with SWBT.

7

under the CBA in exchange for SWBT not terminating her employment.[5] Defendant further argues, while CWA may not have signed the LCA it was aware of the terms and therefore should still be bound by them.[6] Defendant does not explain how McCauley, an individual employee, is entitled to execute a contract (to which CWA is not a party) giving up a right collectively bargained by and belonging to CWA under the CBA. As noted, the CBA gives *CWA* the right to grieve, even absent the approval of its member. Nor does Defendant explain how mere knowledge of the existence of the LCA by CWA waives its rights in the CBA.

Here, the facts before the Court are distinguishable from the prior opinions of the 8th Circuit discussing last chance agreements. First, as previously noted, in this case the parties have not already arbitrated the grievance. Second, and perhaps more important, CWA did not execute the last chance agreement. Defendant claims the LCA is a valid and fully enforceable agreement because it was a bargained for exchange and therefore, any "presumption" of arbitrability is overcome. In essence, Defendant's position is that CWA should be estopped from now claiming the LCA is unenforceable. Defendant misses a critical element regarding its argument of a bargained for exchange – the parties to the LCA are McCauley and SWBT. Plaintiff, CWA, was not a party to the executed LCA and as such, the LCA could not and did not waive CWA's right to arbitrate. CWA simply was not a party to any bargained for exchange contained in the LCA.

Further, CWA cannot be estopped from pursuing its right to arbitrate under the terms of the CBA in a contract between only SWBT and an employee. The terms of the CBA covering

---

[5] Plaintiff argues based on Defendant's admission, at the time the LCA was executed, Defendant had not made a final decision regarding whether McCauley would be terminated.

[6] Defendant cites a 6th Circuit unpublished opinion that held the absence of the Union's signature on an LCA did not nullify the binding effect of the agreement. *Voss Steel Employees Union v. Voss Steel Corp.,* 16 F.3d 1223 (6th Cir. 1994), 1994 WL 28610. However, similar to the 8th Circuit opinions discussed herein, this case was decided after an arbitrator issued an award and the court addressed the validity of the award, not the availability of arbitration. Further, in *Voss*, the evidence showed the union proposed the LCA. In this case, no such evidence exists.

arbitration are between SWBT and CWA. Article IV references the Union and the Company's right to arbitrate. The CBA contains no provision which empowers an individual employee to waive CWA's rights under the CBA.

Defendant argues the 8th Circuit in the *Coca-Cola Bottling* decision has allowed last chance agreements to supersede the terms of a CBA and that "since the parties agreed to it they are bound by it." However, as previously stated, in *Coca-Cola Bottling* the Union was a party to the LCA.[7] Here, CWA was not a party to the executed LCA and therefore there is no "forceful evidence" that CWA waived its right to arbitrate. The Court finds CWA is not bound by the arbitration waiver contained in the LCA.

In reaching its conclusion, the Court is mindful that the 8th Circuit has stated there is a presumption of arbitrability. For the reasons set forth herein, Defendant has not overcome the presumption of aribtrability in this case and therefore, the Court rules the issue should be resolved in favor of coverage.

## **DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S DECLARATIONS**

Defendant also moves the Court, under Fed. R. Civ. P. 56, to strike certain paragraphs in Plaintiff's declarations of Claude Cummings and Kendra Dame. The Court has reviewed the undisputed statement of facts submitted by both parties, including the objections to the same. In its review, the Court has analyzed the parties' submissions of deposition testimony, witness declarations, and documents relevant to the issues presented in both parties' summary judgment briefs. The paragraphs at dispute in Defendant's pending motion have been addressed by Defendant's objections to those same facts in the summary judgment briefing. The Court has

---

[7] In *Boise Cascade Corp. v. Paper Allied-Industrial, Chemical and Energy Workers (Pace), Local 7-0159,* another case relied upon by Defendant, the Union representatives also signed the LCA. 309 F.3d 1075, 1078 (8th Cir. 2002).

9

noted herein where the parties have disagreed over certain alleged facts. However, these "facts" are not material to the Court's ruling that Plaintiff is entitled to judgment as a matter of law pursuant to the reasoning set forth herein. The terms of the CBA and LCA speak for themselves. Further, Dame's deposition testimony and affidavit, while Defendant argues are conflicting, were not material to the Court's analysis of the contractual terms entered into, or not entered into, by the parties in this case. As such, the Court **DENIES** Defendant's Motion to Strike Plaintiff's Declarations.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. No. 24) and **DENIES** Defendant's Motion for Summary Judgment (Doc. No. 21). The Court further **DENIES** Defendant's Motion to Strike Plaintiff's Declarations. (Doc. No. 31).

Consistent with this Opinion, Defendant is **ORDERED** to submit to arbitration before the parties' selected arbitrator regarding the grievance disputing the discharge of Felicia McCauley.

**IT IS SO ORDERED.**

DATED: December 19, 2014

                                                   */s/ Douglas Harpool*
                                                **DOUGLAS HARPOOL**
                                                **UNITED STATES DISTRICT JUDGE**